UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

PERRY FRANCIS,                             :
                                           :
                        Plaintiff,         :
                                           :          REPORT &
        -against-                          :          RECOMMENDATION
                                           :
FEDERAL NATIONAL MORTGAGE                  :          20-CV-5863 (EK)(MMH)
ASSOCIATION, JP MORGAN CHASE BANK, N.A.,   :
HUGH R. FRATER, CELESTE MELLET BROWN,      :
and JAMES DIMON,                           :
                                           :
                        Defendants.        :

--------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Perry Francis, proceeding *pro se*, filed this action against Defendants Federal National Mortgage Association ("Fannie Mae"), JP Morgan Chase Bank ("Chase"), Hugh R. Frater, Celeste Mellet Brown, and James Dimon for claims arising from a foreclosure on a residential property located at 169-06 Linden Boulevard, Jamaica, New York 11434 ("the Property"). Before this Court is Defendants' motion to dismiss the operative complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Also before the Court is Plaintiff's "emergency" petition seeking an order to enjoin and restrain Defendants from foreclosing on the property. The Honorable Eric R. Komitee referred the motion and petition for report and recommendation. For the reasons stated below, the Court respectfully recommends that Defendants' motion to dismiss should be **granted** and that Plaintiff's petition should be **denied as moot**.

1

## I.    <u>BACKGROUND</u>

The following asserted facts are taken from the Second Amended Complaint ("SAC"), its exhibits, and filings in the underlying New York state court and attached to Defendants' motion to dismiss, of which the Court may take judicial notice.  *See Dorce v. City of New York*, 2 F.4th 82, 88 n.2 (2d Cir. 2021); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]").

### A.  The Mortgage and Default

Plaintiff's parents, Willette M. Francis ("W. Francis") and Alfredo Francis ("A. Francis"), purchased the Property in 1990 for $50,000 and secured it by a mortgage (the "Mortgage") with the Dime Savings Bank of New York, FSB ("Dime Savings").  (*See* SAC Ex. B, ECF No. 31-1 at 2.)[1]  Dime Savings' interest in the Mortgage was transferred to Washington Mutual Bank, FA, which later became known as Washington Mutual Bank.  (SAC Ex. C, ECF No. 31-2 at 3.)  In 2008, the Federal Deposit Insurance Corporation ("FDIC"), acting as a receiver of Washington Mutual Bank, assigned the Mortgage to Chase.[2]  (*Id.*; SAC Ex. D, ECF No. 31-3 at 83).  Chase assigned and transferred its interest in the Mortgage to Fannie Mae on January 20, 2015.  (SAC Ex. C, ECF No. 31-2 at 3.)

W. Francis died on January 29, 2011.  (Lim Decl. Ex. 5, ECF No. 34-9 at 13.) According to Fannie Mae, A. Francis and W. Francis defaulted on their loan obligations by

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___") and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] On September 25, 2008, the U.S. Office of Thrift Supervision closed Washington Mutual Bank after the institution financially collapsed and appointed the FDIC as a receiver to handle any outstanding matters on behalf of Washington Mutual Bank.  (SAC, Ex. D, ECF No. 31-3 at 110.)

failing to timely pay the monthly mortgage due on June 1, 2011.  (*Id.* at 36.)  Plaintiff asserts that he is "the heir to the Francis estate."  (SAC, ECF No. 30 at 7.)

### B.  The Foreclosure Action

On February 27, 2015, Chase sought to foreclose on the Property in state court. (Compl., *J.P. Morgan Chase Bank, N.A. v. Alfredo Francis et al.*, Index No. 701895/2015, NYSCEF No. 1.)  That case was dismissed without prejudice after Chase failed to comply with a court order.  (Apr. 13, 2017 Order, *J.P. Morgan Chase Bank, N.A. v. Alfredo Francis et al.*, Index No. 701895/2015, NYSCEF No. 45.)

In January 2016, Fannie Mae initiated a foreclosure action against the Property in the Supreme Court of the State of New York, Queens County (the "Foreclosure Action").  (Lim Decl., Ex. 5, ECF No. 34-9.)[3]  Plaintiff raised several affirmative defenses, including that (1) Fannie Mae "lacks standing to sue because it was not the legal holder or owner of the subject Note and Mortgage at the time it commenced this foreclosure action," (2) "the Note and Mortgage have been separated," (3) Fannie Mae misrepresented the facts in the Mortgage, and (4) the copies of the Mortgage and Note annexed to the Foreclosure Action complaint were not authentic.  (Lim Decl. Ex. 7, ECF No. 34-11 ¶¶ 6, 17, 20, 27.)

The Foreclosure Action court entered a default judgment in favor of Fannie Mae in 2019.  (Lim Decl. Ex. 13, ECF No. 34-17.)  The court later granted Fannie Mae's motion for Judgment of Foreclosure and Sale, over Plaintiff's opposition, finding that he had not vacated

---

[3] The case is captioned *Federal National Mortgage Association v. The Heirs at Large of Williette M. Francis, deceased, and all persons who are husbands, widows, grantees, mortgagees, lienors, heirs, devisees, distributes, successors in interest of such of them as may be dead, and their husbands and wives, heirs, devisees, distributes and successors of interest of all of whom and whose names and places are unknown to Plaintiff, et al.,* Index No. 700143/2016.

his default and "ha[d] failed to establish both a reasonable excuse and meritorious defense to [the] action." (Lim Decl. Ex. 14, ECF No. 34-18 at 1–2.)

### C.  The State Court Action

Thereafter, on March 6, 2020, Plaintiff sued Dime Savings, Chase, and Fannie Mae in Queens County Supreme Court ("the State Court Action")[4], alleging lack of standing, breach of contract, quiet title, and slander of title, and seeking a temporary restraining order and injunctive relief. (Lim Decl. Ex. 17, ECF No. 34-21.) Specifically, he alleged that the chain of title related to the Mortgage was "a fraudulent chain" and that the defendants could not establish actual ownership over the subject note and mortgage. (*Id.* ¶¶ 19–20.)

Chase and Fannie Mae moved to dismiss as against Chase, arguing that Plaintiff's claims were barred by res judicata. (Lim Decl., Ex. 18, ECF No. 34-22.) The court granted the motion, stating that "[t]he instant action is seeking to litigate issues pertaining t[o] the foreclosure case. As such, this action is barred by the doctrine of res judicata." (*Id.* at 1–2.) Additionally, the court noted that "the issues plaintiff seeks to raise in this action should have been properly raised in the foreclosure action" and directed Plaintiff to "mov[e] under that index number for such relief or any other relief he deems appropriate." (*Id.* at 2.)

### D.  The Federal Action

In November 2020, while the State Court Action was still pending, Plaintiff filed this action (the "Federal Action") against Fannie Mae and Chase (collectively, the "Corporate Defendants") and Frater, Brown, and Dimon (collectively, the "Individual Defendants"). (Compl., ECF No. 1.) Broadly construed, Plaintiff alleged that Defendants failed to provide

---

[4] This case is captioned *Perry Francis v. The Dime Savings Bank of New York et al.*, Index No. 703966/2020.

certain mortgage-transfer disclosures in connection with the assignment of the Mortgage. (*See generally id.*)  Plaintiff alleged that Defendants fraudulently filed the Foreclosure Action because Fannie Mae never rightfully owned the Mortgage. (*Id.*)  Plaintiff also alleged causes of action pursuant to several criminal statutes. (*Id.*) Plaintiff later amended the Complaint, and Defendants moved to dismiss. (1st Am. Compl., ECF No. 8; Feb. 1, 2021 Ltr., ECF No. 13.) The Court *sua sponte* dismissed the First Amended Complaint ("FAC") for lack of subject matter jurisdiction because (1) Plaintiff lacked Article III standing, (2) the FAC alleged violations of criminal statutes with no private right of action, and (3) Plaintiff's claims under 42 U.S.C. § 1983 did not assert violations by any state actors. (*See* Mem. & Order, ECF No. 16.)  The Court dismissed Plaintiff's claims brought under 18 U.S.C. §§ 1341, 1348, 241, and 242 with prejudice but granted Plaintiff leave to amend. (*Id.*)

### E.  The Second Amended Complaint

Plaintiff filed the SAC on May 6, 2021. (SAC, ECF No. 30.)[5]  As in the State Court Action and the FAC in this case, the SAC alleges that Defendants "failed to honor the laws that govern these secured transaction's" and "therefore do[] not have the right to Demand Payment/foreclose" on the Property. (SAC, ECF No. 30 at 8.)  The SAC maintains that Plaintiff does not have a contract with Defendants and that there have been no "proper assignments of" the Mortgage because those assignments were not properly recorded. (*Id.* at 8–9.)

The SAC, liberally construed, asserts state common law claims of intentional infliction of emotional distress, slander of title, and fraudulent concealment. (*See* SAC, ECF No. 30 at

---

[5] The Court struck the criminal cause of action asserted under 18 U.S.C. § 1021 that it had previously dismissed with prejudice. (May 12, 2021 Order.)

3, 7–14, 16–18 ("I, Perry Francis, brought this matter into this court for Fraud and misrepresentation . . . .").)  Plaintiff maintains that he is not attempting "to reverse any decision of the lower court" but is instead attempting "to show the fraud" underlying the mortgage and assignments at issue in the Foreclosure Action.  (*Id.* at 3.)  He also alleges that Defendants "brought fraud into the court" because they "never owned the Note" (*id.* at 11), and he asks the Court to hold Defendants "accountable for their fraudulent actions."  (*Id.* at 17.)  Additionally, Plaintiff alleges that he has hired an investigator "to prove that [Defendants] are not the Holder in Due Course of the Original Note and Mortgage" and to "show the fraud the defendant(s) has [sic] perpetuated . . . ."  (*Id.*)  Plaintiff also references various federal statutes and other provisions in connection with Defendants' foreclosure on the Property, including the Truth in Lending Act ("TILA") (*id.* at 8); U.C.C. Article 3-301 ("Person Entitled to Enforce Instrument") (*id.*); and the Consumer Credit Protection Act (the "CCPA"), 15 U.S.C. § 1641(g) (*id.* at 8, 10, 16).  Plaintiff also cites various provisions of the General Accepted Accounting Principles ("G.A.A.P.").  (*See, e.g.*, *id.* at 12, 16.)

As to damages, Plaintiff seeks "monetary relief of Eleven Million Dollars" and requests "all mortgage(s), cleared on the grounds of fraudulent concealment."  (SAC, ECF No. 30 at 18.)  However, at other times, he states that Defendants "can have the property" and that he is "not taking action in federal court to stop or argue the pending foreclosure," but is instead "suing for the mental anguish."  (*Id.* at 17.)

### F.  The Motion to Dismiss

In June 2021, Defendants moved to dismiss, asserting that (1) Plaintiff's claims are barred by *Rooker-Feldman*; (2) Plaintiff lacks standing; (3) Plaintiff's claims are barred by res judicata; (4) the SAC fails to state claims upon which relief may be granted; and (5) the

Individual Defendants cannot be liable for the Corporate Defendants' actions.  (*See* Defs.' Mem., ECF No. 34-1 at 13–28.)  Plaintiff responded that he is "not here to challenge any decisions of the lower courts, I am not asking this court to reverse any decision of the lower court, My evidence referencing the lower courts is to show the fraud, which does not violate the Rooker-Feldman doctrine . . ."  (Pl.'s Opp'n, ECF No. 35 at 1.)  The Court referred the motion for report and recommendation.  (Aug. 24, 2021 Order.)

Shortly thereafter, the Court granted Plaintiff's request to amend the SAC, directed Plaintiff to file a third amended complaint by October 4, 2021, and denied the motion to dismiss with leave to renew.  (Aug. 24, 2021 Ltr., ECF No. 37; Sep. 2, 2021 Order.)  However, Plaintiff did not timely amend the SAC, and Defendants moved to dismiss based on Plaintiff's non-compliance with a court order.  (Oct. 29, 2021 Ltr., ECF No. 38.)  The Court denied the motion but reinstated the SAC as the operative complaint and directed Defendants to state whether they intended to renew and rely on the arguments set forth in their prior motion to dismiss.  (Nov. 5, 2021 Order.)  Defendants then advised the Court that they renewed the arguments in their prior motion.  (Mot., ECF No. 39.)  Plaintiff opposed, and Defendants replied. (Pl.'s 2d Opp'n, ECF No. 41; Defs.' 2d Reply, ECF No. 42.)  Plaintiff then filed an unauthorized sur-reply, to which Defendants responded. (Jan. 28, 2022 Ltr., ECF No. 43; Feb. 9, 2022 Ltr., ECF No. 44.).  Given Plaintiff's *pro se* status, the Court then deemed the motion to dismiss fully briefed.  (Feb. 16, 2022 Order.)

### G. The "Emergency" Petition

On June 2, 2022, Plaintiff filed an emergency petition and quiet title action, styled as a temporary restraining order, asking the Court to enjoin Defendants from foreclosing on the Property.  (Pl.'s Pet., ECF No. 45 at 8.)  Defendants opposed, arguing, in addition to the

arguments raised in their motion to dismiss, that under the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, a district court may not stay a state court proceeding unless expressly authorized by statute or in order to effectuate one of its own judgments. (Defs.' Pet. Opp'n, ECF No. 46 at 3.) The Court referred the petition for report and recommendation. (June 28, 2022 Order.) That same day, Defendants advised the Court that the foreclosure and sale of the Property took place on June 23, 2022, rendering Plaintiff's petition moot. (Defs.' 2d Pet. Opp'n, ECF No. 47 at 1; *id.* Ex. 1, ECF No. 47-1.)

## II.    <u>STANDARDS ON MOTION TO DISMISS</u>

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must show by a preponderance of the evidence that the court has "the statutory or constitutional power to adjudicate" the action. *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, *S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Mazzei v. The Money Store*, 62 F.4th 88, 92 (2d Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.'" *Luna v. N. Babylon Teacher's Org.*, 11 F. Supp. 3d

396, 401 (E.D.N.Y. 2014) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)).  "Where a plaintiff pleads facts that are merely consistent with a defendant's liability, her complaint stops short of the line between possibility and plausibility, and she fails to demonstrate an entitlement to relief." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323–24 (2d Cir. 2021) (citing *Iqbal*, 556 U.S. at 678) (cleaned up).

Because Plaintiff is proceeding *pro se*, the Court will read his papers liberally and will interpret them "to raise the strongest arguments that [he] suggest[s]." *Pierre v. City of New York*, 531 F. Supp. 3d 620, 624 (E.D.N.Y. 2021) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).

## III.   DISCUSSION

Defendants argue that (1) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine; (2) Plaintiff lacks standing; (3) Plaintiff's claims are barred by res judicata; and (4) the SAC fails to state a claim upon which relief may be granted against the Corporate Defendants and the Individual Defendants.  (*See* Defs.' Mem., ECF No. 34-1.)

### A.  The *Rooker-Feldman* Doctrine Bars Some, But Not All, of Plaintiff's Claims

"Under the *Rooker-Feldman* doctrine,[6] federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005)).  The doctrine is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

---

[6] This doctrine is derived from two Supreme Court cases:  *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. "The *Rooker-Feldman* doctrine prohibits district courts from exercising jurisdiction over otherwise properly adjudicated claims only if the plaintiff 'complain[s] of injuries caused by a state court judgment.'" *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

In order for a court to be deprived of jurisdiction under the *Rooker-Feldman* doctrine, four requirements must be met:

> (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced."

*Sung Cho v. City of New York*, 910 F.3d 639, 645 (2d Cir. 2018) (citing *Hoblock*, 422 F.3d at 85). The first and fourth requirements are procedural and depend on the timing of the state court action, while the second and third requirements are substantive and involve an analysis of the plaintiff's federal court claims. *See Hoblock*, 422 F.3d at 85. While all four requirements must be met to preclude jurisdiction, the second requirement is the "core" requirement. *Sung Cho*, 910 F.3d at 646. "The causation requirement is only satisfied if 'the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (quoting *Hoblock*, 422 F.3d at 88) (cleaned up).

On the other hand, *Rooker-Feldman* "generally does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court proceeding, because the adjudication of such claims would not

require the federal court to sit in review of the state court judgment." *Hansen*, 52 F.4th at 100. When a plaintiff's claims "speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments," *Rooker-Feldman* does not apply and the claims are not barred. *Sykes*, 780 F.3d at 95–96.

Here, the procedural requirements of *Rooker-Feldman* are met—*i.e.*, prongs (1) and (4) of the analysis—because Plaintiff lost in state court and the state court judgment was rendered before Plaintiff initiated the Federal Action. *Sung Cho*, 910 F.3d at 645. Therefore, the analysis hinges on the substantive second and third prongs—whether Plaintiff complains of injuries that were caused by the state court judgment and whether he has invited district court review of that judgment. *Id.*

To the extent that Plaintiff asks the Court to "grant him title to his property because the foreclosure judgment was obtained fraudulently," *Vossbrinck*, 773 F.3d at 427, *Rooker-Feldman* bars Plaintiff's claims. By challenging the validity of the note and Mortgage and the ability of Defendants (and the plaintiffs in the Foreclosure Action) to foreclose, Plaintiff challenges the Foreclosure Action's ruling. (*See* Pl.'s Opp'n., ECF No. 43 at 9 ("defendants cannot lawfully and/or legally foreclose"); *see also* SAC, ECF No. 30 at 8 (suggesting that Defendants were not the proper note and mortgage holders); *id.* (stating that Defendants "do[] not have the right to Demand Payment/foreclose[.]"); *id.* at 13 ("The Deed of Trust does NOT convey the right to foreclose.").) In other words, for Plaintiff to be vindicated on these claims, this Court would need to reject the Foreclosure Action ruling. *Vossbrinck*, 773 F.3d at 427 (Plaintiff "is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose. This would require the federal court to review the state proceedings and determine

that the foreclosure judgment was issued in error.").  Instead, "courts in this circuit routinely dismiss challenges to state court foreclosure judgments under *Rooker-Feldman*."  *Desir v. Fla. Cap. Bank, N.A.*, 377 F. Supp. 3d 168, 172 (E.D.N.Y. 2019); *accord Blagrove v. Deutsche Bank Nat'l Tr. Co.*, No. 19-CV-5357 (RPK) (LB), 2021 WL 1601115, at *3 (E.D.N.Y. Apr. 23, 2021) (collecting cases).

However, *Rooker-Feldman* does not bar Plaintiff's claims for constitutional violations and his request for damages related to the mental anguish caused by Defendants' alleged fraudulent conduct.  Most cogently, Plaintiff alleges that he is "suing for the mental anguish, these Defendant(s), has cost me a lot of stress, to a point where I cannot maintain my lively hood [sic][.]" (SAC, ECF No. 30 at 17.)  Plaintiff also states that he brought this matter for "constitutional violations" that have "nothing to do with the res judicata or Rooker-Feldman doctrine(s)."  (Pl.'s Opp'n, ECF No. 43 at 12.)

"The *Rooker–Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."  *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (citing *Vossbrinck*, 773 F.3d at 427–28); *see also Hansen*, 52 F.4th at 100.  Therefore, to the extent that these claims, liberally construed, "seek damages from Defendants for injuries Plaintiff suffered from their alleged fraud, the adjudication of which do[] not require the federal court to sit in review of the state court judgment[,]" *Vossbrinck*, 773 F.3d at 427, these claims would not fall under the ambit of *Rooker-Feldman*.  In other words, *Rooker-Feldman* does not bar Plaintiff's additional claims to the extent they seek relief for damages arising from

Defendants' alleged fraudulent conduct involving the assignment of the note prior to the judgment in the Foreclosure Action. *See Hansen*, 52 F.4th at 100.

Accordingly, the Court respectfully recommends that Plaintiff's fraud claims that seek title to the Property should be dismissed because they would require the Court to review the validity of the judgment in the Foreclosure Action in violation of *Rooker-Feldman*. *Desir*, 377 F. Supp. 3d at 172. The Court further recommends finding that *Rooker-Feldman* does not bar review of Plaintiff's claims for equal protection and intentional infliction of emotional distress to the extent these claims seek damages for Defendants' alleged underlying fraudulent conduct and do not invite review of the state court judgment. *See Hansen*, 52 F. 4th at 100; *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 276 (S.D.N.Y. 2018).

Notwithstanding these recommendations, for the reasons set forth below, the Court respectfully recommends that Plaintiff's claims should be dismissed on other grounds.

### B. Plaintiff Lacks Article III Standing

Defendants also argue that that Plaintiff and other mortgagors lack Article III standing to assert claims based on alleged defective assignments of breaches of trust agreements because "mortgagors have no actual or concrete injury stemming from any deficiencies in the transfer of their mortgage loans." (Defs.' Mem., ECF No. 34-1 at 13.)

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Dorce*, 2 F.4th at 95 (citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[E]ach element of standing must be supported in the same way as any other matter on which the

plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of litigation." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

An injury in fact sufficient to support Article III standing must be "(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (citation omitted) (holding that mortgagor-plaintiffs failed to allege concrete or particularized injury because allegedly defective assignment did not obligate plaintiffs to pay more than amounts originally due). Similar to *Rajamin*, Plaintiff has not alleged that he has suffered an actual or concrete injury as a result of the allegedly defective assignment of his mortgage and the note. *Id.* Plaintiff acknowledges that his parents entered into a loan agreement with Dime Savings to purchase the Property and does not dispute that they defaulted on the loan. (SAC, Ex. B, ECF No. 31-1.) Additionally, the attachments to the SAC show that the mortgage interest was transferred to Washington Mutual Bank, then to Chase, which assigned its interest to Fannie Mae. (SAC, Ex. C, ECF No. 31-2.) "Plaintiff's injury from his allegedly void assignment is hypothetical because he does not allege that there have been changes to the underlying debt obligations or terms of [the] Mortgage, that he has received multiple payment demands from different putative lenders, or that any entity other than Defendants — the purported holders of the Mortgage — has threatened or initiated foreclosure proceedings against him." *Williams v. Wells Fargo Bank, N.A.*, No. 20-CV-5884 (MKB), 2022 WL 2047248, at *3 (E.D.N.Y. June 7, 2022); *see also Rajamin*, 757 F.3d at 85.

Accordingly, Plaintiff lacks standing to assert claims related to the alleged imperfect assignments and/or securitization of the subject loan.  Therefore, the Court respectfully recommends that these claims should be dismissed for lack of subject matter jurisdiction.

### C.  Res Judicata Bars All of Plaintiff's Claims

Defendants also argue that Plaintiff's claims are barred by the doctrine of res judicata because "Plaintiff's claims in this action, seeking damages for fraud and misrepresentation in the foreclosure of the Property causing him mental anguish and emotional distress, are nothing more than defenses and/or claims that could have, and indeed should have, been litigated within the Foreclosure Action."  (Defs.' Mem., ECF No. 34-1 at 19.)  Defendants point out that the court in the State Court Action also reached this conclusion and barred Plaintiff's lawsuit on this basis.  (Lim Decl. Ex. 18, ECF No. 34-22.)

"Res judicata bars litigation on a claim if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *Hansen*, 52 F.4th at 100–01. "The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law."  *Beasley v. Indy Mac Bank*, No. 16-CV-4629 (JS)(AKT), 2018 WL 1611667, at *8 (E.D.N.Y. Feb. 26, 2018), *adopted by* 2018 WL 1611382 (E.D.N.Y. Mar. 31, 2018) (cleaned up).  "New York has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief."  *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397 (KMK), 2019 WL 1429982, at *10–11 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 820 F. App'x 20 (2d Cir. 2020).  In other words, "res judicata will preclude a claim from being raised where (1) a previous action involved an adjudication on

15

the merits; (2) the previous action involved the parties in the subsequent action or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Beasley*, 2018 WL 1611667, at *8 (citing *Streit v. Amdocs, Inc.*, 307 F. App'x 505, 509 (2d Cir. 2009)); *see also Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 111 (2021) ("once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.") (citation and emphasis omitted).

Here, Plaintiff's claims are precluded by res judicata—even those claims for damages that may not be barred under *Rooker-Feldman*. First, Plaintiff's slander of title and fraudulent concealment claims—asserting that Defendants fraudulently obtained the underlying mortgage through improper assignment or transfer of those loans—are barred because Plaintiff should have raised these claims in the Foreclosure Action as defenses to the foreclosure. *Borrani*, 2019 WL 1429982, at *11 ("This transactional doctrine also applies to defenses that could have been litigated in a foreclosure action.") (cleaned up). Indeed, Plaintiff raised many of these arguments regarding the alleged improper assignment of the note and mortgage in his "Answer with Affirmative Defenses" filed in the Foreclosure Action. (Lim Decl., Ex. 7, ECF No. 34-11 ¶¶ 6, 20, 27.) Because these claims were "brought to a final conclusion" in the Foreclosure Action and arise out of the same series of transactions alleged, they are barred under res judicata. *Simmons*, 37 N.Y.3d at 111.

Further, res judicata also bars Plaintiff's liberally construed intentional infliction of emotional distress claim because this claim arises out of the same "factual grouping" and related claims alleged in the Foreclosure Action. *Borrani*, 2019 WL 1429982, at *10. And the Foreclosure Action involved the same parties and resulted in a final judgment on the merits

16

by a court of competent jurisdiction.  *Hansen*, 52 F. 4th at 100–01.  Accordingly, the Court respectfully recommends dismissing Plaintiff's claims for slander of title, fraudulent concealment, and intentional infliction of emotional distress as barred by res judicata.  *Beasley*, 2018 WL 1611667, at *8.

### D.  The SAC Otherwise Fails to State a Claim Upon Which Relief May be Granted

Even if Plaintiff's claims were not barred by *Rooker-Feldman* and res judicata or if Plaintiff did not lack standing, the SAC would still be subject to dismissal under Rule 12(b)(6) for failure to state a claim.

As to the fraud claims, Rule 9(b) imposes a heightened pleading standard for fraud allegations, which must be "pled with particularity."  *Inspired Capital, LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020); *see* Fed. R. Civ. P. 9(b).  A plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014) (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

"Even giving Plaintiff's Complaint the liberal construction it is due, Plaintiff has failed to meet this pleading requirement."  *Beasley*, 2018 WL 1611667, at *10.  The SAC consists almost entirely of legal conclusions regarding the Corporate Defendants' alleged fraud without providing any context for the invocation of various statutes.  (*See* SAC, ECF No. 30 at 14–15, 17.)  For example, Plaintiff states that, "to exercise claims of rights to the Francis' Intangible Obligation, proper assignments of the Francis's Mortgage should have been accomplished. [Defendants] are acting as if proper assignment of the Francis's Mortgage have been

accomplished" and that this constitutes "fraud" because Defendants "never owned the Note[.]" (SAC, ECF No. 30 at 9, 11.)  However, these accusations do not explain the "fraud"—i.e., whether the improper assignments of the note itself constitute fraud, or whether the Corporate Defendants' reliance on the allegedly improper note in state court is the fraudulent conduct. Such bald accusations, absent any factual nexus, are insufficient to state a claim for relief against the Corporate Defendants.  *Desir*, 377 F. Supp. 3d at 174 (complaint which "intones the names of various causes of action with no factual development whatsoever" fails to state a claim under Rule 12(b)(6)).

To the extent that the SAC alleges a TILA claim that is not otherwise barred, such claim cannot survive.  "A private right of action under TILA arises on the date a violation of that statute occurs, and a claim for damages must be brought within one year from the occurrence of the violation."  *St. Maarten v. J.P. Morgan Chase Bank, N.A.*, No. 20-CV-762 (MKB), 2021 WL 2217503, at *5 (E.D.N.Y. Jan. 14, 2021) (citing *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 540 (2d Cir. 2018)).  Plaintiff filed the Federal Action nearly 30 years after Plaintiff's parents executed the Mortgage in 1990, making any possible TILA violations time-barred.

Finally, the SAC also fails to plausibly state a claim as to the Individual Defendants. "A corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable[.]"  *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018) (citing *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001)).  But the only specific factual allegations regarding the Individual Defendants state that each Individual Defendant is "supposed to overlook the actions of their employees, to ensure everything is done by law," "has failed to do his [or her]

duties as the C.E.O. and is liable for their fraudulent actions, it's a crime of Omission," and "failed to act, when their employees conspired to blatantly violate federal [sic]."  (SAC, ECF No. 30 at 7.)   Even broadly construed, these conclusory statements do not state the acts or omissions each Individual Defendant committed to perpetrate fraud alleged on behalf of the Corporate Defendants.  *See Suleiman v. Igbara*, 599 F. Supp. 3d 113, 122–25 (E.D.N.Y. 2022) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.")  (cleaned up).  Nor do the allegations  "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Accordingly, the Court respectfully recommends dismissing the SAC as to the Individual Defendants for failure to state a claim.

### E.  Leave to Amend is Not Warranted

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (internal quotations and citations omitted).  A court may deny leave to amend where the amendments would be futile.  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6).");  *Dean v. Doberman*, No. 21-CV-8320 (VB), 2023 WL 2480012, at *10 (S.D.N.Y. Mar. 13, 2023) ("Leave to amend would be futile here because even the most generous reading of plaintiff's amended complaint and opposition does not give any indication he can  . . . state a valid claim.");  *Ozuzu v. Greenpoint Mortg. Funding*, No. 19-CV-3783 (AMD)(SMG), 2020

WL 5658776, at *12 (E.D.N.Y. Sept. 23, 2020) ("Where dismissal is based on jurisdictional or res judicata grounds, amendment is futile because "the problem is substantive and better pleading will not cure it.") (cleaned up). Where, as is here, a plaintiff has been given ample opportunity to amend his complaint and failed to address the deficiencies therein, a court may deny leave to amend. *See, e.g.*, *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 125 n.9 (2d Cir. 2022).

In this case, any amendment would be futile. As discussed above, the Court lacks subject matter jurisdiction over Plaintiff's claims that directly attack the state court judgment, such as his slander of title and fraudulent concealment claims. Further, those claims, in addition to the intentional infliction of emotional distress claim, are barred by res judicata. And, generally, as to both the Corporate and Individual Defendants, Plaintiff fails to state a claim for which relief can be granted. *See Ozuzu*, 2020 WL 5658776, at *12.

As the Court lacks subject matter jurisdiction to hear the majority of Plaintiff's claims and his remaining claims are precluded by res judicata, the Court respectfully recommends dismissing the SAC with prejudice because amendment would be futile.

### F. The Petition is Moot

A court loses subject matter jurisdiction when an event occurs that makes it impossible for the court to grant any effectual relief. *See Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010). When an event occurs during the pendency of a motion that renders it impossible for a court to grant the requested relief, the matter becomes moot. *See Bader v.*

*Goldman Sachs Grp., Inc.*, 311 F. App'x 431, 432 (2d Cir. 2009) (summary order); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 549 (E.D.N.Y. 2019).

Here, Plaintiff expressly asks the Court to intervene to prevent the foreclosure of the Property while reiterating many of the claims alleged in the SAC and arguments opposing the motion to dismiss. (*See, e.g.*, Pl.'s Pet., ECF No. 45 at 5 ("The deed of trust does NOT convey a right to foreclose."); *id.* at 6 ("The mortgage deed does not convey a lawful right to foreclose"); *id.* at 8 (asking the Court to "[g]rant an Emergency Temporary Restraining Order and/or Preliminary Injunction to prevent the foreclosure/sale of Perry Francis property, to wit the property identified in this action.").) But as Defendants noted, the foreclosure sale of the Property already occurred. (Defs.' 2d Opp'n, ECF No. 47 at 1; *id.* Ex. 1, ECF No. 47-1.) This Court cannot grant the relief Plaintiff seeks – specifically, to prevent the foreclosure of the Property. *See Sebelius*, 605 F.3d at 140. Therefore, the Court respectfully recommends that Plaintiff's petition be denied as moot.[7]

## IV.   **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that: (1) Defendants' motion to dismiss at ECF Nos. 33, renewed at ECF No. 39, should be **granted**; and

---

[7] Even if the foreclosure had not yet occurred, the AIA also bars Plaintiff's requested relief because "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Accordingly, numerous courts have held that the AIA does not permit a court to enjoin state court foreclosure proceedings. *See, e.g.*, *Ozuzu*, 2020 WL 5658776, at *6–7 (citing *Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972)); *Wenegieme v. US Bank Nat'l Ass'n*, No. 16-CV-2634 (AMD), 2016 WL 3348539, at *3 (E.D.N.Y. June 9, 2016); *Abbatiello v. Wells Fargo Bank N.A.*, No. 15-CV-4210, 2015 WL 5884797 (E.D.N.Y. Oct. 8, 2015). The same reasoning applies here, where Plaintiff has not established that his petition falls within any of the statutory exceptions to the AIA.

(2) Plaintiff's petition for a temporary restraining order at ECF No. 45 should be **denied as moot**.

A copy of this Report and Recommendation is being served on Defendants via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Plaintiff at the address of record on the docket: Perry Francis, 169-06 Linden Blvd., Jamaica, NY 11434.

Within 14 days of service, any party may serve and file objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Komitee.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 30, 2023

/s/ Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge